**UNITED STATES of America, Appellee,**

v.

**Troy LAWRENCE, Appellant.**

**No. 90–1103NI.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 16, 1990.

Decided Oct. 9, 1990.

Stephen A. Swift, Cedar Rapids, Iowa, for appellant.

Janet L. Petersen, Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Troy Lawrence appeals from the sentence imposed on him after he pled guilty to one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988), and one count of making false representations to a Federal Bureau of Investigation (FBI) agent, in violation of 18 U.S.C. §§ 2, 1001 (1988). Lawrence argues that the district court erred in considering unseized, uncharged amounts of cocaine to determine his baseline offense level under the Federal Sentencing Guidelines because his cocaine involvement was separate from the marijuana conspiracy and hence did not constitute "relevant conduct" under § 1B1.3(a)(2) of the guidelines. Lawrence further argues that the evidence does not support the district court's approximation of the quantity of cocaine under § 2D1.4 of the guidelines for the purpose of determining his base offense level. We affirm in part and reverse in part.

I.

Troy Lawrence was indicted on October 19, 1988 and charged with three counts of drug-related offenses.[1] On December 2,

---

1. Count 1 of the indictment charged Lawrence with possessing with the intent to distribute marijuana during about October and November of 1987, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (1988). Count 2 of the indictment charged Lawrence with traveling and using a

1988, Lawrence entered into a plea agreement whereby he agreed to plead guilty to one count of conspiracy to distribute and possess with intent to distribute marijuana, in exchange for the government dropping the remaining two counts.[2] In January 1989, FBI agents questioned Lawrence about his involvement with cocaine trafficking. At that time, Lawrence denied any such involvement. Plea Tr. at 35–36. After Mark Stearns, Lawrence's marijuana source, informed the FBI of Lawrence's cocaine dealing, the FBI subjected Lawrence to a polygraph examination. During the examination, conducted in April 1989, Lawrence again denied any involvement with cocaine. Id. at 34–35. Immediately after the examination, however, Lawrence admitted purchasing approximately one pound of cocaine in eighth-ounce,[3] quarter-ounce, and half-ounce quantities between 1980 and 1988. Sentencing Tr. at 14. Lawrence eventually admitted after further questioning that his source was David Lederle and that his customers included Brian Howell and Ken Davis. Id. The FBI elicited no further information from Lawrence concerning his cocaine involvement.

At the sentencing hearing, the district court received evidence from FBI Special Agent Dudley for the government, and from Mark Stearns, Lawrence's marijuana source and boyhood friend, for Lawrence. Dudley testified as to Lawrence's marijuana involvement, and that Lawrence admitted purchasing cocaine. In addition to the one pound statement, Dudley testified on cross-examination that Lawrence admitted

selling at least twenty grams to Brian Howell and two or three eighth-ounce quantities to Ken Davis during the summer of 1988. Sentencing Tr. at 18. Dudley also testified that Lawrence stated he was unsure whether he distributed cocaine to anyone else. Id. at 20. Dudley admitted that the FBI had not questioned Lawrence about distributing cocaine in the years 1984 to 1987, nor had they asked him how much cocaine he personally used. Dudley also admitted that there were no statements about Lawrence's cocaine involvement from Lederle, Howell, or Davis because those were ongoing investigations. Id. at 23. Finally, Dudley admitted that the principal evidence regarding what quantities of cocaine Lawrence possessed and when he distributed them came from Lawrence himself. Id. at 24.

Testifying for Lawrence, Mark Stearns detailed their marijuana conspiracy and admitted that he began dealing cocaine at approximately the same time as he began the conspiracy. Sentencing Tr. at 35–37. Stearns denied selling or giving any cocaine to Lawrence and stated that he could not remember whether he had ever told Lawrence he was dealing cocaine. Id. at 36, 38. He also stated that he could not remember whether Lawrence had ever indicated to him that Lawrence knew about his cocaine involvement. Id. at 38–39. Stearns did admit, however, that after he moved to Arizona, where he continued his cocaine and marijuana dealings, Lawrence visited him on several occasions. Id. at 37.

The district court next entertained the government's and the defendant's argu-

---

facility in interstate commerce with the intent to distribute the proceeds of an unlawful activity, namely the distribution of marijuana, and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). Count 2 also charged Lawrence with distributing the proceeds of an unlawful activity, in violation of 18 U.S.C. § 1952(a)(1) (1988). Count 3 charged Lawrence with conspiring to distribute, and possess with the intent to distribute, marijuana between about 1984 and about February of 1988, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988).

**2.** At the plea hearing, Lawrence admitted his marijuana dealings, that his source was Mark

Stearns, and that his customers included Brad Rosharik and Ken Davis. Plea Tr. at 31–33.

**3.** A discrepancy between the transcript and the government's brief exists concerning this figure. At the sentencing hearing, the FBI agent testified that Lawrence admitted to purchasing "eighth-ounce" quantities of cocaine. Sentencing Tr. at 14. Quoting the same language, the government's brief states that Lawrence admitted purchasing "eight-ounce" quantities. Although this may have been an oversight on the government's part, because Lawrence is challenging the district court's including eight ounces of cocaine in his baseline offense level, the oversight is somewhat egregious.

ments concerning, among other issues, whether Lawrence's cocaine involvement constituted "relevant conduct" under § 1B1.3(a)(2) of the guidelines [4] for the purpose of determining his base offense level under the guidelines, and what amounts of cocaine should be included in the same determination. Regarding the relevant conduct issue, the district court characterized the correct inquiry as whether the common scheme involved was a broad drug distribution scheme or a marijuana distribution scheme. Sentencing Tr. at 46. Relying on the "broad scope of the relevant conduct analysis, as indicated [by] the [guideline's] background notes," the district court found there was "a course of conduct and common scheme to possess and distribute drugs," and thus included cocaine in the base offense level determination. Sentencing Tr. at 55.

Regarding the quantity of cocaine to be included, the district court noted that the probation officer, in the Presentence Investigative Report (PSI), used a starting figure of sixteen ounces of cocaine, based on Lawrence's possession of one pound over the period from 1980 to 1988, divided it over an eight-year period, and then included the portion that fell within the four-year period of the conspiracy.[5] Sentencing Tr. at 53–54. The district court relied on § 2D1.4 Application Note 2[6] to approximate the quantity of cocaine and attributed

eight ounces to Lawrence. *Id.* at 55. This quantity of cocaine, added to the sixty-five pounds of marijuana the district court had determined was appropriate, resulted in a heroin equivalency of 74.39 grams and a Level 22 baseline offense. Lawrence received a two-level increase for obstruction of justice for lying to the FBI agent, which resulted in a final base offense level of 24. The district court then combined the Level 24 offense with Lawrence's criminal history category of II and sentenced him to concurrent sixty-month terms of imprisonment, four years of supervised release on the conspiracy charge, three years of supervised release on the obstruction of justice charge, and a $100 special assessment.

## II.

### A. Standard of Review

The standard of review for appeals of sentences imposed under the Federal Sentencing Guidelines is set out in 18 U.S.C. § 3742(e)(4) (1988):

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
>
> ....

U.S.S.G. § 1B1.3 (emphasis added).

---

4. Because Lawrence was sentenced after November 1, 1989, the effective date of the last amendments to the guidelines, the November 1989 version of the *Guidelines Manual* contains the language of the appropriate guidelines provision. Section 1B1.3 is titled "Relevant Conduct (Factors that Determine the Guideline Range)" and states in pertinent part:

    (a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base level, (ii) the specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

    •    •    •    •

    (2) solely with respect to offense of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were *part of the same course of conduct or common scheme or plan* as the offense of conviction;

5. The PSI had recommended the inclusion of twelve ounces of cocaine, which defense counsel stated at the hearing should have been eight ounces. Sentencing Tr. at 54.

6. Section 2D1.4 is entitled "Attempts and Conspiracies." The relevant Application Notes state in pertinent part:

    1. ... If the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct).

    2. Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall *approximate* the quantity of the controlled substance....

U.S.S.G. § 2D1.4 comment. (nn. 1–2) (emphasis added in Note 2).

We have previously stated that under this standard of review, "whether uncharged drugs are part of a common scheme or plan is a factual finding which will be disturbed only if clearly erroneous." *United States v. Sleet,* 893 F.2d 947, 949 (8th Cir.1990) (citing *United States v. Wright,* 873 F.2d 437, 443–44 (1st Cir.1989)); *United States v. Gooden,* 892 F.2d 725, 728–29 (8th Cir. 1989), *cert. denied sub nom. Keener v. United States,* — U.S. —, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990). *But see United States v. Woolford,* 896 F.2d 99, 104 (5th Cir.1990) (refusing to decide whether common scheme or plan is a finding of fact, subject to clearly erroneous standard, or an application of the guidelines to the facts, and thus entitled to due deference). A district court's determination of a quantity of drugs for sentencing purposes is also a factual finding subject to the clearly erroneous standard. *See United States v. Murphy,* 899 F.2d 714, 717 (8th Cir.1990).

### B. Relevant Conduct

■ Lawrence's first argument on appeal is that his cocaine involvement did not constitute relevant conduct under § 1B1.3 of the guidelines.[7] Lawrence was convicted of conspiracy to distribute and possess with intent to distribute marijuana. The appropriate guideline for that charge is § 2D1.4 which governs attempts and conspiracies. The guideline provides that the base offense level for someone convicted of a conspiracy is the same as if the object of the conspiracy had been completed. U.S. S.G. § 2D1.4(a). The appropriate guideline in this case is § 2D1.1 which governs drug-related offenses. Application Note 12 of this guideline provides: "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct). If the amount seized does not reflect the scale of the offense, *see* Application Note 2 of the Commentary to § 2D1.4." U.S.S.G. § 2D1.1, comment. (n. 12) (emphasis in original). As noted above, § 1B1.3 specifies that the district court must determine a base offense level

on the basis of all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Lawrence argues that his cocaine involvement did not constitute relevant conduct because the "cocaine transactions took place at a different time, involved different parties, and were not a part of the same course of conduct, common scheme or plan." Brief of Appellant at 2. The state of the law regarding relevant conduct under the guidelines is unsettled. No bright-line rule exists defining "common scheme or plan," or "same course of conduct." Some courts have applied, without formally adopting, a narrow relevant conduct standard, holding relevant conduct findings not clearly erroneous where separate drug sales "all occurred within three weeks time, and were all made to the same government informant," *United States v. Taplette,* 872 F.2d 101, 106 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989), where the drug sales involved the same purchaser and took place within a week, *United States v. Mann,* 877 F.2d 688, 690 (8th Cir.1989), and where the transactions involved cocaine of the same quality sold within a three-week period, *United States v. Vazzano,* 906 F.2d 879, 884 (2d Cir.1990).

Other courts have taken a broader approach, holding not clearly erroneous relevant conduct findings where the separate drug transactions "facilitated the commercial relationship between the defendant as drug dealer and the ... drug purchaser," *United States v. Rutter,* 897 F.2d 1558, 1562 (10th Cir.1990), and where there were "drug transactions of a similar character, conducted in the same geographical area within [six to eight] months of the offenses of conviction ... demonstrat[ing] a pattern of continuous drug activity," *United States v. Gooden,* 892 F.2d 725, 729 (8th Cir.1989). The Second Circuit recently undertook a lengthy examination of the relevant conduct standard in holding not clearly erroneous a finding of relevant conduct where the

---

7. *See supra* note 2.

defendant sold drugs to the same purchaser eight to fourteen months prior to the defendant's charged offense. *United States v. Santiago*, 906 F.2d 867, 872–73 (2d Cir.1990). The court focused on the guideline's "same course of conduct" language and did not address "common scheme or plan." The court began by stating that a "normal reading" of the guideline "suggests that the sentencing court is to consider such factors as the nature of defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a pattern of behavior." *Id.* at 872. The court then discussed the guideline's similarity to Fed.R.Crim.P. 8(a), quoting at length the views of the Chairman and the General Counsel of the United States Sentencing Commission on this issue:

> The phrase "same course of conduct" as used in subsection (a)(2) [of § 1B1.3], does not have an exact counterpart in Rule 8(a) of the Federal Rules of Criminal Procedure. The phrase, however, at least encompasses that portion of Rule 8(a) permitting joinder of offenses that "are of the same or similar character" or that "involved two or more acts or transgressions connected together." The guideline term is broader than this analogous language, since it does not require a *connection* between the acts in the form of an overall criminal scheme. Rather, the guideline term contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct.

*Id.* (quoting Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495, 515–16 (1990) (emphasis in original; footnote omitted)).

The Second Circuit in *Santiago* makes an important implicit distinction in its relevant conduct analysis, namely that "same course of conduct" should properly be considered separate from "common scheme or plan." A plain meaning reading of the guideline supports this distinction: a disjunctive "or" connects the two phrases.

*See Garcia v. United States*, 469 U.S. 70, 73, 105 S.Ct. 479, 481, 83 L.Ed.2d 472 (1984) ("Canons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings."); *see also* W. Eskridge & P. Frickey, Legislation: Statutes and the Creation of Public Policy 644 (1988) ("Terms connected by the disjunctive 'or' are generally read to have separate meanings and significance.").

This reading of the guideline also finds support in the Wilkins & Steer article quoted above. Immediately after the language the Second Circuit quoted above, the authors proceed to state:

> For example, if a drug dealer sells heroin to various customers on one day and cocaine to various customers on the next day, his conduct may or may not be part of a "common scheme or plan." *There can be little doubt however, that his conduct is within the "same course of conduct" heading because of the similarity and close temporal proximity of his illegal actions.*

Wilkins & Steer, 41 S.C.L.Rev. at 516 (emphasis added). The district court in this case, using a "broad scope of relevant conduct analysis," specifically found that Lawrence's marijuana and cocaine involvement constituted "a course of conduct ... to possess and distribute drugs." Sentencing Tr. at 55. Having carefully reviewed the record as a whole, we cannot say this finding is clearly erroneous.

At the plea hearing, Lawrence admitted he had distributed cocaine within several months of the marijuana conspiracy. At the sentencing hearing, the district court received evidence that Lawrence had admitted to cocaine possession during the period he was charged with the marijuana conspiracy, and cocaine distribution four months later. There also was evidence at the sentencing hearing that Lawrence's marijuana and cocaine dealings involved at least one common customer, Ken Davis. Moreover, Lawrence's longtime friend, Mark Stearns, testified at the sentencing hearing that he was Lawrence's marijuana source, that he was also a large-scale cocaine dealer, and that Lawrence had visited him on several

occasions after he had moved to Arizona and continued his marijuana and cocaine dealings. Stearns specifically denied selling or giving cocaine to Lawrence, but stated that he could not remember whether he had ever informed Lawrence of his cocaine involvement or whether Lawrence had ever asked him about it. Finally, Stearns was also the person who had informed the FBI of Lawrence's cocaine trafficking. The evidence before the district court sufficiently showed that Lawrence was involved in a "continuous pattern of drug activity," *Gooden*, 892 F.2d at 729, from at least 1984 until the summer of 1988. The conduct at issue, possessing and distributing cocaine, is similar in character to, and occurred at approximately the same time as, the distribution of marijuana. Whether there was a common scheme or plan need not be determined, because there was sufficient evidence of the same course of conduct. Based on this evidence, it was not clearly erroneous for the district court to determine that Lawrence's marijuana and cocaine involvement constituted the same course of conduct under guideline § 1B1.3.

### C. Quantity of Cocaine

■ Lawrence's second argument on appeal is that there was insufficient evidence for the district court to include eight ounces of cocaine in determining his base offense level. The district court included eight ounces of cocaine for the purpose of determining Lawrence's baseline offense level based on his admission that he purchased one pound of cocaine during the period 1980 to 1988. Because the conspiracy charge to which Lawrence pled guilty covered half of that period, the district court credited him with half of the sixteen ounces. In doing this, the court relied on § 2D1.4 Application Note 2 of the guidelines which provides for the approximation of unseized quantities of drugs.[8]

When examining findings under the clearly erroneous standard, an appellate court may reverse only when "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Although we sympathize with the district court's difficulty in attempting to apply the Federal Sentencing Guidelines, in this case it committed clear error by crediting Lawrence with eight ounces of cocaine based on the evidence before it.

Application Note 2 to § 2D1.4 of the guidelines does permit the approximation of unseized quantities of drugs. The error in this case occurred when the district court approximated the quantity of Lawrence's cocaine involvement by simply dividing in half the amount Lawrence admitted to purchasing over an eight-year period. Application Note 2 indicates that in approximating quantities of drugs, district courts may consider the market price for the drug, financial or other records, similar transactions in controlled substances by the defendant, and the size or capacity of any laboratory involved. U.S.S.G. § 2D1.4, comment. (n. 2). This goes to the underlying goal that some evidence supports the approximation. In *United States v. Gohagen*, 886 F.2d 1041 (8th Cir.1989), we affirmed the quantity approximation of a district court where a police officer had observed a piece of crack cocaine in a sandwich bag, although the crack cocaine itself was not in evidence. *Id.* at 1043. In *United States v. Gerante*, 891 F.2d 364 (1st Cir.1989), the First Circuit held not clearly erroneous a district court approximation of drug quantity based on $68,000 in cash found in the defendant's residence. The district court divided that figure by the "price generally obtained" for cocaine and credited the defendant with the resulting quantity. The First Circuit held that it was "fully consistent with the Guidelines to convert the instant drug money into estimated drug quantities." *Id.* at 370. In *United States v. McKeever*, 906 F.2d 129 (5th Cir.1990), the Fifth Circuit found not clearly erroneous a district court's approxi-

8. *See supra* note 6.

mation of drug quantity based on laboratory capacity, even though the laboratory may have been incapable of actually producing the drug. *Id.* at 133–34.

A recent Sixth Circuit decision, *United States v. Walton*, 908 F.2d 1289 (6th Cir. 1990), addressed the approximation issue at some length. The district court in that case had approximated drug quantities for the purpose of sentencing conspirators in a drug ring. The district court made its calculation based on evidence that the conspirators had dealt a certain quantity per week during one month of the conspiracy, and that they had the ability to process and sell the drug during the course of the conspiracy. The court then assumed the conspirators had distributed that same quantity throughout the conspiracy. In holding this estimation clearly erroneous, the Sixth Circuit stated:

> We believe that the guidelines do not permit the District Court to hold a defendant responsible for specific quantities of drugs unless the court can conclude that the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate.

*Id.* at 1302 (emphasis in original). The circuit court proceeded to examine the evidence before the district court on the approximation issue and found that the assumption of continuous drug activity during the course of the conspiracy was not supported by either direct or circumstantial evidence. *Id.* at 1302–03.

In the case before us, the only evidence supporting the district court's approximation of cocaine quantity is Lawrence's admission that he sold approximately one ounce during the summer of 1988, and the court's finding that Lawrence had purchased one pound over an eight-year period. There was no direct or circumstantial evidence that Lawrence distributed any cocaine during the period of his marijuana conspiracy. The FBI did not question Lawrence as to cocaine distribution during this period, nor did the government introduce any evidence concerning Lawrence's cocaine distribution during this period. Furthermore, Lawrence contended at the plea and sentencing hearing that he did not distribute cocaine during the period of the marijuana conspiracy. Therefore, the evidence does not support a finding that Lawrence *actually* distributed eight ounces of cocaine.

Not only is the district court's quantity determination not supported by a preponderance of the evidence, but it was apparently based on an arbitrary assumption. In the PSI which the district court relied upon in sentencing Lawrence, the probation officer concluded that crediting Lawrence with twelve ounces [9] of cocaine might be arbitrary, but it seemed to give him some credit for activities that occurred outside the date of the conspiracy. This sort of justification does not comport with the requirements of the due process clause. *Walton*, 908 F.2d at 1302. As the Sixth Circuit has stated: "While this may result in an underestimation of the quantity of drugs involved in some few cases, we believe it is nonetheless constitutionally required to prevent excessive sentencing." *Id.*

The district court's method of approximating unseized, uncharged amounts of cocaine was arbitrary and was not supported by a preponderance of the evidence. Therefore, we must remand for resentencing on the issue of the quantity of cocaine to be included in Lawrence's baseline offense level.

### III.

For the reasons given, we affirm the district court's finding that Lawrence's cocaine involvement constituted the "same course of conduct" as his marijuana conspiracy for the purpose of including a quantity of cocaine to determine the baseline offense level. We reverse the district court's finding as to the quantity of cocaine

9. *See supra* note 5.

to be included and remand for proceedings otherwise consistent with this opinion.