**UNITED STATES of America, Plaintiff,**

v.

**Joseph P. BALANO, Defendant.**

No. 92–00023–01–CR–W–6.

United States District Court,
W.D. Missouri, W.D.

Feb. 19, 1993.

Supplemental Opinion Feb. 23, 1993.

Charles E. Ambrose, Asst. U.S. Atty., Kansas City, MO, for plaintiff.

John R. Cullom, Cullom & Warhurst, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

SACHS, Senior District Judge.

This opinion deals with certain novel and important legal issues that are dispositive of the major points that must be resolved at sentencing on February 22, 1993. Other issues will be orally ruled. Unrelated matters were dealt with in a published pretrial ruling. *United States v. Balano*, 788 F.Supp. 1076 (W.D.Mo.1992).

Defendant has been acquitted of a drug conspiracy charge, involving events in January and February 1991. He has been convicted of a comparatively small cocaine sale in a "sting" operation, after the key distributor was caught and became a cooperating witness for the Government. Instead of being an alleged subsidiary distributor for the witness in a proposed five kilogram transaction (where one kilogram was actually acquired) and a subsequent ten to twelve kilogram transaction, planned but aborted insofar as defendant is concerned, he simply stands convicted of selling the witness, Elfarra, one ounce of cocaine on December 12, 1991, some ten months later.

Believing that defendant won his conspiracy acquittal by perjury, and that its trial proof relating to defendant was weakened by an overconfident presentation and a desire not to overtry a strong case, the Government seeks to recoup its trial failure by sentencing hearing proof that will satisfy the court, by a preponderance of the evi-

dence, that defendant was in fact a conspirator, and should be punished for the conspiracy by using a "related conduct" theory. The Probation Office accepts the Government's approach, and concludes that defendant is to be sentenced under a Guideline range of 188 to 235 months, as contrasted with its view that a range of 10–16 months is applicable if the one ounce sale stands alone.

Having heard and received proof in a hearing that went into a second day, I accept the Government's factual premises. I believe, by a preponderance of evidence (and also by clear and convincing evidence) that defendant Balano was a coconspirator with his cohorts, Henry, Nigro and others. I believe Balano perjured himself, and that the additional material presented to me might well have convinced a jury to convict him on the conspiracy charge. But defendant's counsel makes a persuasive Double Jeopardy argument or, if sentencing is not treated as a criminal proceeding subject to Double Jeopardy analysis, a watered-down version available under the rubric of Due Process. Defendant also argues convincingly that the alleged conspiracy events were not "relevant conduct," under the Sentencing Guidelines. If there had been a conspiracy conviction, it is argued that it would have gone to Criminal History calculations but that the drug amounts involved should not be added to the fatal ounce transferred to Elfarra in December 1991. After some study I agree with defendant's legal arguments.

### I.

■ The related conduct issue is a matter of applied common sense, governed in this circuit by the approach in *United States v. Montoya*, 952 F.2d 226 (8th Cir. 1991), and *United States v. Lawrence*, 915 F.2d 402 (8th Cir.1990). In *Montoya*, Judge Loken wrote that it was error to treat a marijuana incident in Florida as relevant conduct, chargeable at sentencing to a defendant in an Omaha cocaine con-

spiracy three months earlier. As stated in *Montoya*, the Relevant Conduct provision in the Guidelines (Sec. 1B1.3(a)(2)) turns on undefined concepts; that is, whether the other acts were part of "the same course of conduct or common scheme or plan" as the offense of conviction.

*Lawrence* says we must look for a "continuous pattern of drug activity," similar in nature and having some temporal proximity. 915 F.2d at 407. In that case, a marijuana conviction was enough to trigger sentencing for cocaine sales within the same period of several months and involving at least one common customer.

In the present case, the product is the same and the personnel are the same. However, the conspiracy charge involved a multi-kilo plan for acquisition *from* Elfarra, whereas the conviction was for a dramatically smaller sale *to* Elfarra, after a ten month break, in which Balano was "cut out" of the cocaine conspiracy distribution activity. The comparatively small sale to Elfarra was not a natural or normal development, evidencing a pattern of conduct, but was a planned "sting operation" designed to show defendant's proclivity to being a drug dealer. Although the question may be close, I find the situation analogous to *Montoya*, and as in *Montoya* I conclude it would be outside the circle of culpability to hold Balano for amounts contemplated in the earlier conspiracy with Elfarra.[1] *Compare, United States v. White*, 888 F.2d 490, 500 (7th Cir.1989).

### II.

■ On the more legally significant aspect of the case, the Double Jeopardy problem, there is a considerable body of legal doctrine developing against my conclusion, but none directly on point in the Eighth Circuit, and perhaps none where the Government's activity is as plainly and candidly an attempt to win on rematch what it was unable to win in the original trial. If the

---

1. I agree with the Government that there may be occasions where a pattern of swapping drugs could lead to a proper inclusion of drugs both bought and sold; I also agree that the events are not so dissimilar that they could not be tried jointly. Neither of these points seems dispositive.

Government is not openly challenging the Double Jeopardy Clause as commonly understood, it seems to me that it has allowed its sense of injustice to prevail over its duty to accept the lesson and rationale of that Clause, and that the court would be violating Due Process if it were to follow the Government's lead.

I am well aware of the Eighth Circuit ruling that acquittal conduct can be used at sentencing, under the Guidelines and as an evidentiary matter, because the different burdens of proof prevent collateral estoppel. *United States v. Dawn*, 897 F.2d 1444 (8th Cir.1990). While that case did not deal with Double Jeopardy or Due Process, I am aware that cases elsewhere have rejected such challenges to sentencing proceedings. E.g., *United States v. Boney*, 977 F.2d 624 (D.C.Cir.1992), and cases cited. As Judge Randolph discusses in his separate opinion in *Boney*, there is something counter-intuitive in the developing cases. 977 F.2d at 644–7. "Conceptual nicety" seems to be prevailing; perhaps the sense of the existence of the forest is being lost because of the trees.

The Government contends that defendant's argument is precluded by *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). In *Dowling* the Court held there was no error, or at least no fatal error, where evidence pertaining to a bank robbery charge which resulted in an acquittal was presented in a subsequent bank robbery case. But the trial court had instructed the jury about the acquittal (contrary to the claim here that I should second-guess the jury's verdict) and the evidence admitted was deemed to be consistent with the earlier acquittal. Without such factors, it is not clear that a majority of the Court would have affirmed.

As observed in the dissent of Justice Brennan in *Dowling*, "[t]he core protection of the Double Jeopardy Clause attaches to an acquittal and prohibits retrial for the 'same offense' after an acquittal." 493 U.S. at 355, 110 S.Ct. at 675. Defendant in

this case may be forgiven for supposing that the elaborate rehearing of the conspiracy case last week was, in effect, a retrial. The Government apparently contends that the lower burden of proof and the loss of entitlement to jury consideration means that the sentencing hearing should not be considered a retrial. But I would agree with Judge Pregerson that questions about the use of acquittal conduct to enhance punishment at sentencing have "nothing to do with the standard of proof." *United States v. Brady*, 928 F.2d 844, 851 n. 12 (9th Cir.1991). It does not seem likely to me that the First Congress, in formulating the Double Jeopardy Clause of the Fifth Amendment, or Justice Black, in describing its purpose in *Green v. United States*, 355 U.S. 184, 187–8, 78 S.Ct. 221, 223–4, 2 L.Ed.2d 199 (1957), were overly concerned with the "nicety" of the burden of proof. Certainly the burden of proof was an *aspect* of the Supreme Court's finding of similarity between Missouri's bifurcated sentencing procedures and a criminal trial. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). *See also, Delap v. Dugger*, 890 F.2d 285, 317 (11th Cir.1989) (a criminal defendant "should not be sentenced to death on the basis of a felony murder for which he has been acquitted."). But I must suppose that the critical point is that both sentencing and the original prosecution involve personal jeopardy. It is thus unnecessary to consider a collateral estoppel issue, as in a civil forfeiture case. To say there is no sound double jeopardy issue in this case does not seem to me to make much sense.

I recognize that the Eighth Circuit has rejected Confrontation Clause applicability at sentencing under the Guidelines. *United States v. Wise*, 976 F.2d 393 (8th Cir. 1992). Perhaps I should anticipate avoidance of the Double Jeopardy Clause by the court which avoided use of the Confrontation Clause. The Double Jeopardy Clause does, however, seem more imperative, when viewed with past practice.[2] It is part

---

2. To repeat an exchange during oral argument, neither I nor the prosecutor had experienced a sentencing retrial of acquitted conduct recently or in pre-Guideline days, and I have always tried scrupulously to avoid giving any material weight to acquitted conduct (as well as arrests),

of the Fifth Amendment, which is not literally confined to the structuring of standard "criminal prosecutions." In Fifth Amendment terminology, the Government seeks to make Balano answerable and again in jeopardy for the cocaine conspiracy; this it cannot do, if the Amendment is given full force and effect. Moreover, the Eighth Circuit in *Wise* did insist on reliable hearsay standards for Due Process in sentencing. At a minimum, therefore, I believe that Due Process in sentencing precludes my giving effect to evidentiary findings based on newly produced evidence, challenging the acquittal.

For the reasons stated, counsel are directed to confine their arguments and calculations at sentencing to the one ounce conviction, and contentions consistent with the foregoing analysis. SO ORDERED.[3]

### SUPPLEMENTAL OPINION

Oral argument at sentencing yesterday (at which a 21–month sentence was imposed) suggests the appropriateness of a brief supplement to the previous memorandum and order. A third alternate basis for rejecting the Government's appeal for punishment enhancing the sentence tenfold appears from the cautious wording of the majority opinion in *United States v. Galloway*, 976 F.2d 414 (8th Cir. en banc, 1992). *Galloway* was cited by Government counsel as adversely ruling on my comment from the bench that a jury trial might be needed, as a matter of Due Process, if extreme enhancement were sought. The *Galloway* majority ruled that jury trial rights do not come into play where, "as applied here" the "limits of due process" have not been exceeded. 976 F.2d at 425.

*Galloway* was a case in which adjustments sought would nearly triple the sentencing range. 976 F.2d at 416. The court noted an earlier Eighth Circuit decision "stating in dictum that [a] sevenfold increase in sentence might require proof at sentencing by more than a preponderance of the evidence." 976 F.2d at 426. This practice would follow the Third Circuit approach in *United States v. Kikumura*, 918 F.2d 1084 (3rd Cir.1990). If adjustments are to be made in practice where requested enhancement is extreme, it seems possible that the appellate courts could also require such innovations as a jury trial if five or ten years of additional imprisonment were at stake at sentencing, beyond the period of confinement dictated by the crime of conviction. Such a practice after an acquittal would highlight the Double Jeopardy aspect of the proceeding in this case.

---

whereas some loose practice was familiar where methods of proof were involved. Regarding the supposed use of acquittal conduct prior to the Guidelines, I would be astounded if there were anecdotal support for any judge confessing that a sentence was increased five-fold (or twenty times) because the judge believed the acquittal was a mistake.

**3.** I do not carry logic to an extreme, in appraising whether, in my judgment, defendant has accepted responsibility by his successful trial testimony. I am now satisfied that he perjured himself at trial. Perjured testimony was not necessarily fully believed by the jury.