In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-2872 & 10-3079

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAY LONGSTREET and MICHAEL ERVIN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 471—**Matthew F. Kennelly**, *Judge.*

ARGUED JUNE 6, 2011—DECIDED JANUARY 20, 2012

Before KANNE, EVANS*, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This successive appeal requires us to consider the resentencing of Ray Longstreet and Michael Ervin, members of a Chicago operation that trafficked heavily in various controlled substances in

_____

* Circuit Judge Terence T. Evans died on August 10, 2011, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

the early 2000s. In our earlier opinion, we affirmed Longstreet's conviction but ordered a limited remand asking whether the district court wanted to resentence him in light of the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007). *United States v. Longstreet*, 567 F.3d 911 (7th Cir. 2009). Ervin pleaded guilty and appealed only his sentence; we ordered a limited remand in his case as well. *Id.* The district court advised us that it would like to reconsider the sentences, so we vacated the sentences and remanded for resentencing. *United States v. Longstreet*, 359 F. App'x 673 (7th Cir. 2010).

On remand the district court lowered Longstreet's sentence from 456 to 360 months and lowered Ervin's sentence from 300 to 240 months. Both men again appeal. Because the district court did not err in calculating the drug quantity attributable to Longstreet, we affirm his sentence. Ervin's appeal presents no nonfrivolous issues, so we grant his counsel's *Anders* motion to withdraw and dismiss Ervin's appeal.

## I. Background

A full recitation of the facts is found in our previous opinion and will not be repeated here. A jury convicted Longstreet, the chief of a Chicago drug-trafficking operation, of, among other things, conspiracy to possess with intent to distribute controlled substances, including cocaine, crack, heroin, and marijuana. Ervin, Longstreet's right-hand man, pleaded guilty to the conspiracy charge and two related offenses. Longstreet and Ervin

were sentenced to 456 and 300 months in prison, respectively, based on crack-cocaine quantities. Both men appealed.

Shortly thereafter, the Supreme Court decided *Kimbrough*, which permits district courts to deviate from the sentencing guidelines' crack-to-powder ratio. Accordingly, we affirmed Longstreet's conviction but ordered a limited remand to allow the district court to consider whether to resentence Longstreet and Ervin in light of *Kimbrough*. *See Longstreet*, 567 F.3d at 926-27. The court answered affirmatively, so we vacated the sentences and remanded for resentencing. *See Longstreet*, 359 F. App'x 673.

At resentencing the central issue for Longstreet was the amount of crack attributable to him. The district court relied on the testimony of Anthony Sutton, one of Longstreet's coconspirators. Sutton testified at trial that he sold an average of 1.5 ounces of crack per day, seven days a week, on a particular corner in Chicago. The sales began in either the summer of 2002 or the summer of 2003 until Sutton's arrest in May 2005. Sutton paid "rent" for his corner to Kenneth Wallace, an associate of Longstreet, until July 2004, at which point he paid Longstreet's brother and later Ervin.

But Sutton also testified that he did not think his rent to Wallace was going to Longstreet. As a result Longstreet argued that he was not responsible for Sutton's sales prior to July 2004. Although the district judge deemed the evidence sufficient to attribute all of Sutton's sales to Longstreet, he noted that Longstreet's

version of the facts would still yield a guidelines range of 360 months to life. For that reason the judge accepted Longstreet's argument.

Longstreet also disputed the amount of drugs Sutton sold during this period. First, Longstreet argued that Sutton's testimony was generally unreliable because he waffled about which year he started selling on the corner. Second, Longstreet argued that because Sutton failed to specify over what time period he sold an average of 1.5 ounces of crack per day, it would be unreliable to use that amount. The judge found Sutton's testimony reliable and applied the 1.5-ounces-per-day average to the entire time Sutton sold drugs on the corner. The judge acknowledged that Sutton's average could have included a higher per-day sales rate prior to July 2004. But the judge ultimately concluded that any artificial inflation would be cancelled out by the decision to credit Longstreet's argument that the additional drugs Sutton sold between 2003 and 2004 should not be attributed to him.

The court therefore held Longstreet responsible for 12 kilograms of crack; that is, ten months times 1.5 ounces per day. With additions not relevant here, Longstreet's advisory guidelines range was 360 months to life. The court imposed a sentence of 360 months.

Ervin, meanwhile, qualified as a career offender, which resulted in a guidelines range (without drug quantities) of 262 to 327 months. With drug quantities Ervin's range likely would have been 360 months to life. But the judge aimed to achieve rough proportionality between

Ervin's sentence and those of his coconspirators, so he made findings to support the lower range and then sentenced Ervin to 240 months.

## II. Analysis

### A. Longstreet

At sentencing the government must prove the quantity of drugs attributable to a defendant by a preponderance of the evidence. *United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir. 2008). In addition, the district court must base its sentence on information with "sufficient indicia of reliability to support its probable accuracy." *United States v. Bautista*, 532 F.3d 667, 672 (7th Cir. 2008) (quotation marks omitted). We review the court's factual findings regarding drug quantity only for clear error. *Id.*

Because "drug dealers ordinarily do not use invoices and bills of lading, . . . sentencing courts may make reasonable estimates as to drug quantities." *United States v. Rodriguez*, 67 F.3d 1312, 1325 (7th Cir. 1995). But an estimate not based on reliable information must be overturned, even if it is "conservative to the point of generosity." *United States v. Howard*, 80 F.3d 1194, 1205 (7th Cir. 1996). Determining witness credibility is especially within the province of the district court and "can virtually never be clear error." *United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008) (quotation marks omitted).

Longstreet first attacks Sutton's testimony as generally unreliable because he wavered about whether he began selling crack on the corner in 2002 or 2003. The district

court, having heard the testimony at trial, found Sutton generally reliable. We see no reason to second-guess that determination. *See id.* Moreover, once the court decided to attribute to Longstreet only Sutton's sales between July 2004 and May 2005, whether Sutton sold drugs *prior to* July 2004 became irrelevant, at least for purposes of the mathematical calculation.

Longstreet next challenges Sutton's daily sales average as unreliable. Basically, Longstreet contends that Sutton's sales rate from July 2004 to May 2005 might have been different than the one from his entire time on the corner, which Sutton testified was 1.5 ounces of crack per day. Longstreet therefore argues that the district court committed clear error by using an unreliable estimate.

Of course, Longstreet is technically correct. For example, and simplifying the dates slightly, Sutton might have sold 2 ounces per day from September 2003 to July 2004 and 1 ounce per day from July 2004 to May 2005. This still produces an average of 1.5 ounces per day over the twenty-month period, despite a lower average over the period the court attributed to Longstreet. But a much more plausible interpretation of Sutton's testimony is that he sold roughly 1.5 ounces every day with slight variations that become irrelevant once a large number of days is considered. Longstreet offers only speculation that Sutton's sales were unevenly distributed.

Longstreet relies heavily on *United States v. Lawrence*, 915 F.2d 402 (8th Cir. 1990). There, the defendant admitted selling 16 ounces of cocaine during an eight-year

period, but the drug conspiracy at issue covered only four of those years. *Id.* at 408. To estimate the amount of cocaine to be included, the district court assumed the 16 ounces were evenly distributed and simply halved the total amount to arrive at 8 ounces. *Id.* The Eighth Circuit reversed, finding no evidence that the sales were evenly distributed throughout the eight-year period, or even that the defendant sold *any* drugs during the relevant four years. *Id*. at 409.

By contrast, here, Sutton's average is itself evidence of how the sales were distributed; namely, 1.5 ounces per day. If Sutton had testified that he sold 36 kilograms over three years, we could not assume that he sold 10 kilograms in a given ten-month period. The total quantity and the total time period do not, without more, indicate the distribution. But that's not what happened. Sutton testified that he sold an *average* of 1.5 ounces *per day* over two or three years. This evidence does not raise the problem at issue in *Lawrence*. Sutton's testimony about a daily amount indicates that the sales were relatively evenly distributed, allowing the district court to extrapolate the per-day amount to a larger period of time. Accordingly, the court's drug calculations were supported by reliable evidence.

## B. Ervin

Ervin's appellate counsel filed an *Anders* brief requesting permission to withdraw because the appeal

presents no nonfrivolous issues; Ervin did not respond. *See Anders v. California*, 386 U.S. 738 (1967). Because Ervin did not challenge his guilty plea in the first appeal, our review is limited to the resentencing. *See United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). Ervin's counsel identifies two potential issues: whether the guidelines range was correctly calculated and whether the sentence is reasonable.

Ervin's guidelines range was undoubtedly appropriate because he admittedly qualified as a career offender. Ervin's sentence, which was below the guidelines range, is therefore presumptively reasonable. *See United States v. Curb*, 626 F.3d 921, 927 (7th Cir. 2010). In addition, the district court thoroughly explained its reasoning, citing both the relevant factors under 18 U.S.C. § 3553(a) and the need for proportionality. We therefore agree with Ervin's counsel that the appeal presents no nonfrivolous issues.

For the foregoing reasons, we AFFIRM Longstreet's sentence. We also GRANT Ervin's counsel's motion to withdraw and DISMISS Ervin's appeal.