# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 14-2756

———————————————

United States of America

*Plaintiff - Appellee*

v.

Edwin James

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

——————————

Submitted: February 13, 2015
Filed: July 7, 2015

——————————

Before RILEY, Chief Judge, LOKEN and SMITH, Circuit Judges.

——————————

SMITH,  Circuit Judge.

Edwin James appeals his sentence of lifetime supervised release and certain conditions of supervised release imposed by the district court after James pleaded guilty to failing to register as a sex offender, in violation of 18 U.S.C. § 2250, as is required by the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901–16991. We affirm in part and reverse in part.

## I. *Background*

In 1979, James pleaded guilty in Washington state to one count of statutory rape in the first degree for having sexual intercourse with a four-year-old girl. Soon after his conviction, James was declared to be a sexual psychopath. The court sentenced him to a suspended sentence of twenty years at a psychiatric hospital contingent on his completion of a sexual psychopathy program. During his treatment at the hospital, James admitted to hospital staff that he sexually abused three of his children and his nephews on several occasions. The treatment also elicited a confession from James that he sexually abused a six-year-old girl when he was seventeen years old, and that he sexually abused a 12- or 13-year-old girl when he was in his twenties. Hospital staff also believed that James's dependence on alcohol exacerbated his deviance and "aggravate[d] his potential for acting out in a predatory fashion."

In 1985, James decided to leave the sexual psychopathy program short of completion because of a domestic dispute with his wife. Hospital staff strongly warned against James leaving the program because they did not believe James had overcome his sexual deviance. In a letter to the court, hospital staff called attention to "[h]is deviousness, attempts to shift accountability and to manipulate others" even after several years of treatment. After James left the program, the court revoked his suspended sentence and sentenced James to prison. James was paroled in 1988. Soon after his release, James began a sexual relationship with Linda Hance, a mentally handicapped woman. James and Hance share a child together who was born in 1993. Additionally, James was convicted twice in California for failing to register as a sex offender in 1995.

James and his family moved to De Queen, Arkansas in early 2013. James last registered as a sex offender on May 17, 2012, in Sacramento, California, where he was then living. Coordination between law enforcement in Sacramento and De Queen

lead to James's location and arrest in October 2013. James was indicted on one count of failing to register under SORNA, to which he pleaded guilty.

The district court sentenced James to 15 months' imprisonment and a lifetime term of supervised release. Upon James's objection to lifetime supervised release, the court stated the following:

> 18 United States Code 3[853(k)] states, the authorized term of supervised release under section 2250 is, any term of years not less than 5 or life. Guidelines [§] 5D1.2[(b)(2)] . . . says, not withstanding or in spite of [section 5D1.2(a)(1)–(3),] if [the] offense is a sex offense the term is then five years to life. Now, [James's counsel] explains that failure to register is not, and it's supported by the law, a sex offense. It's merely a violation of the law.

> \* \* \*

> I think circumstances like this and maybe the 8th Circuit or somebody will be corrected, but administrative violations of law can't trump what you were originally convicted of. Supervised release, I think under these conditions should be for life. Although, the defendant's crime initially was the rape of a four year old child . . . on about November 18, 1979. And, sexual intercourse with another child, age four, in October or November of '79. Also, another child, three years old, in November '79. All of these terrible offenses. As a result you were committed to the Western State Hospital in Washington state for sexual psychopath[y] . . . . [You] [u]ltimately pled guilty to being a sexual psychopath.

> \* \* \*

> The records of the defendant's hospital stay in the sentence clearly reflected that you were in need of continuing treatment and evaluation. In the opinion of [t]he Court this should have been for life. . . . The state of Washington defines [a] sexual psychopath as any person who is

-3-

affected in a form of psychoneuroses, or in a form of psychopathic personality. Which form predisposes such person to the commission of such sexual offenses in the degree constituting him or her a menace to the health and safety of others. . . . The defendant [was] also diagnos[ed] as having a schizoid personality with several deviations. Psychopath[y], pedophillia and severe alcohol addiction. And, the discharge . . . notes described you as devious, shift[ing] accountability, and tr[ying] to manipulate others. It's these things that under the law I am going to find that you should be placed on supervised release, rather than five years, but for life.

The court revisited its rationale when pronouncing its sentence. When discussing James's sentence, the court stated that "the law says . . . five years, but then I can impose a term of supervised release more than that five years if I explain the circumstances, and we've done that." The court continued to explain that it thought James needed the lifetime supervised release because "he's adjudged a psychopath. . . . He is also deemed [to have a] schizoid personality, sexual deviation, [and] severe alcoholism." Additionally, the court noted that hospital staff described James's *post*-treatment personality as "devious, shifting accountability[,] and manipulative."

The court also considered James's objections to many of his special conditions for supervised release. James objected to the child-proximity restriction that precluded him from being around children without the consent of the probation office. James argued that this special condition should be modified to accommodate visitation with his grandchildren because he has not been convicted of a sex offense in 35 years. James used the same reasoning to argue that the special condition that he attend sex-offender counseling was unnecessary because he showed no signs of recidivism. The district court was not convinced. The court found that the challenged conditions of supervised release were justified when taking into account James's history of sexual deviance and his untreated mental health diagnoses.

When announcing James's sentence, the court orally announced each of the special conditions it was imposing, including a restriction on using computers. James objected to a special condition restricting his use of computers, to which the court responded that "[a] lot of times on the computer you can get some things that are more . . . objectionable than your objection. . . . I'm going to uphold [it]." When the court issued its written judgment, many of the written special conditions were materially different from the oral sentence.

## II. *Discussion*

James appeals the district court's lifetime sentence of supervised release and contends that the district court erred in imposing written special conditions that are more restrictive than the oral pronouncement. James also renews his challenge to several conditions of supervised release. The term of supervised release is a part of a defendant's sentence. 18 U.S.C. § 3583. "In reviewing a challenge to a sentence, we 'must first ensure that the district court committed no significant procedural error.'" *United States v. Dace*, 660 F.3d 1011, 1013 (8th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). In review for procedural error, "we review a district court's factual findings for clear error and its interpretation and application of the guidelines de novo." *Id.* (quotation and citation omitted). "If we discover no procedural error, we then consider the substantive reasonableness of the sentence imposed under a deferential abuse-of-discretion standard." *United States v. Timberlake*, 679 F.3d 1008, 1011 (8th Cir. 2012) (citation omitted).

### A. *Lifetime Term of Supervised Release*

James first challenges the court's imposition of a lifetime term of supervised release. James claims the district court committed procedural error and alternatively argues that his sentence is substantively unreasonable.

#### 1. *Procedural Soundness*

Procedurally, James contends that the district court miscalculated the Guidelines range of the term of supervised release. James first argues that the district court applied the wrong Guideline section when it stated that "Guidelines [§] 5D1.2[(b)(2)] . . . says . . . if [the] offense is a sex offense the term is then five years to life." Section 5D1.2(b)(2) was cited in the presentence investigation report ("PSR") and states that "the term of supervised release . . . may be up to life, if the offense is . . . . a sex offense." *Id.* (2013). James argues that failing to register under SORNA is not a "sex offense." Therefore, to the extent the court adopted the PSR recommendation and applied § 5D1.2(b)(2) to justify increasing James's term of supervised release to a lifetime term, the court erred.[1]

Complete reading of the district court's disposition, however, reveals that the court did not base its sentence length on § 5D1.2(b)(2) at all. In fact, the court explicitly acknowledged that "[James's counsel] explains that failure to register is not, and it's supported by the law, a sex offense. It's merely a violation of the law." Thus, the court recognized that § 5D1.2(b)(2) was not applicable to James because it understood that a failure to register is not itself a sex offense.

In calculating James's sentence, the court stated that "the law says . . . five years, but then I can impose a term of supervised release more than that five years if I explain the circumstances, and we've done that." The court acknowledged that the term of supervised release was five years (as James himself argues), but he varied upward to extend the term to life based on several factors he enumerated.[2] A court

---

[1]Since James's sentencing on July, 2, 2014, the Guidelines have been updated to clarify this very issue. The Guidelines now explicitly state that "an offense under 18 U.S.C. § 2250 (Failure to Register)" is not a sex offense. U.S.S.G. § 5D1.2 cmt. 1 (2014).

[2]Our holding does not require us to discuss arguments regarding the Sentencing Commission's amendment 786 to the commentary of § 5D1.2(c) and the status of *United States v. Deans*, 590 F.3d 907 (8th Cir. 2010). *See* U.S.S.G. Supplement to

may take into account factors from 18 U.S.C. § 3553(a) "in determining the length of the term and the conditions of supervised release." 18 U.S.C. § 3583(c). *See Gall*, 552 U.S. at 50 (stating that if a sentencing court "decides that an outside-Guidelines sentence is warranted, he must . . . ensure that the justification is sufficiently compelling to support the degree of the variance . . . [and] adequately explain the chosen sentence to allow for meaningful appellate review"); *United States v. Goodwin*, 717 F.3d 511, 521 (7th Cir. 2013) ("Obviously, 18 U.S.C. § 3583(k) clearly authorizes any term of years from five to life. . . . [I]f on remand the district court imposes a supervised release term greater than five years, this term will have to be explained by something other than the currently available five-year Guidelines range."). The district court adequately supported its sentence by citing James's mental health diagnoses, which include sexual psychopathy, schizoid personality, sexual deviation, and severe alcoholism. The court also noted that hospital staff described James's *post*-treatment personality as devious, manipulative, and one that shifts accountability. Further, the court did not abuse its discretion by taking into account James's history and the need to protect the public given there was no medical evidence that James recovered from his psychopathy. *See* 18 U.S.C. § 3553(a)(1), (2)(C).

## 2. *Substantive Reasonableness*

Next, James argues that the upward variance from five years to life is substantively unreasonable. James essentially challenges the district court's weighing of relevant § 3553(a) factors. *See United States v. Kane*, 639 F.3d 1121, 1136 (8th Cir. 2011) ("[S]ubstantive review exists, in substantial part, to correct sentences that are based on unreasonable weighing decisions." (quotation omitted)). District courts have broad discretion to "assign some factors greater weight than others in

App'x C, amend. 786 (2014). Given the disposition of the district court, we do not believe its decision was based on a stale interpretation of § 5D1.2(c), but rather was an upward variance from the Guidelines range of supervised release of five years.

determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009) (citation omitted). Thus, "[j]ust because we 'might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'" *United States v. Boneshirt*, 662 F.3d 509, 517 (8th Cir. 2011) (quoting *Gall*, 552 U.S. at 51). Therefore, it is an "unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

We believe the district court reasonably weighed James's history and mental diagnoses, including any mitigating factors. Considering the "totality of the circumstances," *Feemster*, 572 F.3d at 461, the district court justified a lifetime term of supervised release. While James has only been convicted of one sex offense, James's inveterate sexual deviance illustrates why criminal history may inadequately capture the gravity of a defendant's actions. James's sexual psychopathy was not a passing personality querk that temporarily manifested itself in 1979. Rather, James's sexual deviance goes back to his teenage years when he sexually abused a young girl. This deviance continued in his twenties when he abused another young girl; in his thirties when he abused his own children, nephews, and others; and in his forties when he engaged in a sexual relationship with a mentally handicapped woman. Further, the court noted that James's recovery from his mental diagnoses is at best questionable. James has never completed any mental-health or sex-offender treatment program. The potential dormancy of James's untreated conditions, taken together with James's past conduct, provide sufficient basis for affirming the district court's exercise of discretion in varying upward in the term of supervised release.

B. *Imposition of Special Conditions*

Next, James argues that the district court erroneously imposed nearly every special condition of supervised release. As a general matter, district courts enjoy

"wide discretion when imposing terms of supervised release." *United States v. Smart*, 472 F.3d 556, 557 (8th Cir. 2006) (quotation omitted). This discretion, however, is not unlimited. Release conditions must "(1) [be] reasonably related to the pertinent § 3553(a) sentencing factors, (2) involve[ ] no greater deprivation of liberty than reasonably necessary for the purposes set forth in § 3553(a), and (3) [be] consistent with any pertinent policy statements issued by the United States Sentencing Commission." *United States v. Johnson*, 773 F.3d 905, 907–08 (8th Cir. 2014) (alterations in original) (quotation and citation omitted); 18 U.S.C. § 3583(d). In order to fulfill these statutory requirements, sentencing courts must make particularized findings to ensure that special conditions are imposed on an individualized basis. *United States v. Curry*, 627 F.3d 312, 315 (8th Cir. 2010) (per curiam) (citing *United States v. Bender*, 566 F.3d 748, 752 (8th Cir. 2009)), *vacated on other grounds*, *Curry v. United States*, 132 S. Ct. 1533 (2012).

First, we address Special Condition 6, which states that "[t]he defendant shall have no access to the internet, or any device capable of accessing the internet to include a computer and/or cell phone without the permission of the probation officer." There is no evidence in the PSR or any other source in the record of James ever using the internet, much less using the internet for unlawful purposes. *See United States v. Springston*, 650 F.3d 1153, 1156 (8th Cir. 2011) (vacating a restriction on internet access because "[t]he record . . . is devoid of evidence that [the defendant] has ever used a computer for any purpose") *vacated on other grounds*, *Springston v. United States*, 132 S. Ct. 1905 (2012); *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005) (vacating a restriction on computer use and internet access because "the record is devoid of evidence that [the defendant] has ever used his computer for anything beyond simply possessing child pornography"). The government concedes that this special condition should be vacated, and we agree.

Second, James challenges Special Condition 1 in its entirety because the court failed to make an individualized finding justifying this deprivation of liberty. Special

Condition 1 requires James to submit to reasonable searches of his person and his property upon suspicion that he has violated a condition of supervised release. Because this argument was not raised before the district court, we review for plain error. *See United States v. Durham*, 618 F.3d 921, 935 (8th Cir. 2010). "Plain error occurs if the district court errs, the error is clear under current law, and the error affects the defendant's substantial rights." *United States v. Kreitinger*, 576 F.3d 500, 505 (8th Cir. 2009). Section 3583(d) addresses this very condition when it gives courts the discretion to impose,

> as an explicit condition of supervised release for a person who is a felon and required to register under [SORNA], that the person submit his person, and any property, house, residence, [or] vehicle . . . to search at any time . . . by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person.

Special Condition 1 is expressly allowed by § 3583(d) because James is an individual required to register under SORNA. Thus, the district court did not commit plain error by imposing the special condition on James.

James also challenges Special Condition 2's requirement that he participate in evaluation, treatment, counseling, or testing for substance abuse. The PSR indicates that James started drinking at age seven and drank heavily in the past. Also, he was diagnosed with severe alcohol dependency during his stay at the psychiatric hospital. The hospital also found a link between James's alcohol consumption and his predatory personality. Additionally, James regularly used methamphetamine, LSD, and marijuana. Nevertheless, James contends that he has not used drugs in over 20 years, and as a result, the Special Condition is not reasonably related to § 3553(a). James also contends that the court failed to make individualized findings to impose the condition. We disagree. James has admitted that his sexual abuse of children was related to alcohol abuse. Further, the court made particularized findings when it

referenced James's diagnosis of alcohol addiction more than once when considering James's sentence. Given the district court's findings and the undisputed information in the PSR, we find that Special Condition 2's requirement to submit to substance abuse examination and treatment is reasonably related to § 3553(a) factors such as protecting the public and providing James with needed medical care and correctional treatment.

Next, James challenges Special Condition 3's requirement that he participate in a mental-health and/or sex-offender treatment program. Despite his history, James has never completed a sex offender treatment program and has never otherwise addressed his mental health diagnoses. "In order to impose a condition of participation in mental health treatment, the district court must have reason to believe the defendant needs such treatment." *United States v. Wiedower*, 634 F.3d 490, 494 (8th Cir. 2011) (quotation and citation omitted). Thus, James argues that this special condition is not reasonably related to the goals stated in § 3553(a) because he has not shown indications of recidivism in over 35 years since 1979. James cites *United States v. Scott* to illustrate this point. 270 F.3d 632, 635 (8th Cir. 2001). In *Scott*, the defendant was convicted of armed bank robbery. *Id.* at 633. The district court imposed special conditions tailored to sex offenders "not because of Scott's offense of conviction . . . , nor because of the conduct that led to revocation of either of his terms of supervised release, but because of an unrelated 1986 sex-offense conviction. In our view, this was an abuse of discretion." *Id*. First, the court noted that the special conditions did not meet the statutory requirements because they "bear no reasonable relationship to the nature of the convicted offense." *Id.* at 636. Second, the court "[a]dditionally" noted that the age of the 15-year-old offense coupled with a lack of evidence that the defendant "repeated this behavior in any way since his 1986 conviction" was another reason "the special conditions seem unlikely to serve the goals of deterrence or public safety, since the behavior on which the special conditions are based . . . has ceased." *Id.*

James's case is readily distinguishable from *Scott*. First, the facts accepted by the district court included James's sexual deviancy spanning three decades and over ten victims. This history suggests that recidivism remains a substantial risk for James. *See Smart*, 472 F.3d at 599 (the defendant showed a tendency for recidivism because of a history of sexual deviance). Also, nearly ten years of James's purported 35 years of good behavior was spent in prison or in a psychiatric hospital. Given James's battle with sexual deviance for the majority of his life and his failure to complete any treatment addressing this issue, the district court did not abuse its discretion. Thus, we find the district court's requirement that James complete a mental-health and/or sex-offender treatment program is reasonably related to § 3553(a) factors such as protecting the public and providing James with needed medical care and correctional treatment.

Last, James challenges Special Condition 5 in its entirety. This condition precludes James from having contact with minors and restricts him from entering places where minors are known to be present and regularly congregate. James argues this special condition is unnecessary because he has not shown any signs of recidivism that would justify restricting his contact with children. At the sentencing hearing, James asked the district court to amend the special condition to make allowance for visiting his grandchildren when other adults were in the house, but the district court denied this request. On this record, James's behavioral history justifies the district court's imposition of this release condition. This condition is not based only on James's 35-year-old sex offense and other alleged acts of sexual deviance committed 20 years ago. *See Scott*, 270 F.3d at 635 (finding that a 15-year-old sex offense was too remote). James's mental diagnoses and his failure to address such diagnoses justify measures such as Special Condition 5 for the protection of minors. Therefore, the district court did not err in imposing Special Condition 5.

### C. *Written Special Conditions Broader Than the Oral Sentence*

James last argues that the district court's written judgments conflict with the special conditions the court pronounced from the bench. "'Where an oral sentence and the written judgment conflict, the oral sentence controls.'" *Durham*, 618 F.3d at 934 (quoting *United States v. Foster*, 514 F.3d 821, 825 (8th Cir. 2008)). James contends that several of the written special conditions conflict with the oral sentence.

In *United States v. Brave*, we addressed a release condition in which the district court pronounced that "you shall not reside with any child under the age of 18, that would include your children" and "[y]ou shall have no correspondence, telephone contact, or communication with the victim through a third party unless approved in advance by the probation officer." 642 F.3d 625, 627 (8th Cir. 2011). The written judgment, however, stated "[t]he defendant shall not reside with any child under the age of 18 or *contact her children in any manner* unless approved in advance and in writing by the probation officer." *Id.* (emphasis added). We found that the written judgment was broader than the oral sentence because the former precluded any contact with the defendant's children, whereas the oral sentence only precluded the defendant from living with her children and having contact with the victim, who was one of her children. Thus, we vacated the phrase "or contact her children in any manner" from the written special condition. *Id.* We also addressed this issue briefly in *Durham* when a written special condition added the phrase "internet-connected computer or other device with internet capabilities" to the oral sentence of an internet restriction condition of release. 618 F.3d at 945. Originally, the oral sentence only restricted internet access and did not specify any restrictions on devices. *Id.* Accordingly, we vacated the added phrase "because it broadens the restriction." *Id.*

First, James challenges Special Condition 1, which states in pertinent part that "[t]he defendant shall submit his person, residence, and/or vehicle(s) to searches which may be conducted at the request of the United States Probation Officer at a reasonable time, and in a reasonable manner, *based upon reasonable suspicion of a*

-13-

*violation of any conditions of release*." (Emphasis added.) The oral pronouncement, however, stated that James must "[s]ubmit [him]self, [his] residence, [his] vehicle, to any and all searches by the probation office upon a reasonable suspicion of contraband." As the government concedes, the emphasized language in the written condition broadens the deprivation of liberty because the reasonableness of the search was expanded to include a violation of any condition of release, as opposed to the more narrow suspicion of contraband. We, therefore, vacate the emphasized language and remand to the district court to harmonize the written condition with the oral sentence.

Second, James challenges Special Condition 2, which states that "[t]he defendant shall comply with any referral deemed appropriate by the probation officer for in-patient or out-patient evaluation, treatment, counseling, or testing for substance abuse and mental health issues." The oral sentence only stated that James would have to "[s]ubmit to in and out patient counseling for sex abuse, and counseling when and to the extent necessary." In an earlier explanation, the court stated James would be required to "[p]articipate in in or out patient counseling for sexual abuse, or any other health issues."[3] While we caution district courts from being loose with oral sentences, we find that the oral judgment does not materially contradict Special Condition 2. From the bench, the court referenced that James would have to participate in and submit to counseling for health issues. This reasonably includes undergoing ordered evaluations, treatments, counseling and testing for health issues such as mental health and substance abuse. Special Condition 2 is upheld.

Third, James challenges Special Condition 3, which states that James shall "participate in a mental health and/or sex offender treatment program, as directed by

---

[3]James concedes that the court likely misspoke when requiring him to attend "counseling for sex abuse," which is geared towards victims of sex crimes. It is clear from the context that the court meant to reference sex-offender treatment.

the probation officer. The defendant shall abide by all program rules, requirements, and conditions of the sex offender treatment program, *including submission to polygraph testing*, to determine if he is in compliance with the conditions of release." (Emphasis added.) There is some overlap with the oral sentence and explanation mentioned for Special Condition 2. The oral sentence to "[s]ubmit to in and out patient counseling for sex abuse, and counseling when and to the extent necessary" was clearly meant to reference the sex-offender treatment in the written Special Condition 3. Further, the "health issues" referenced in the court's oral explanation covers the "mental health" program contemplated in Special Condition 3. Polygraph testing, however, expands the burden on James and must be vacated from the special condition.

Fourth, James challenges Special Condition 5, which states that James will "have no direct contact with minors (under the age of 18) without the approval of the probation officer. *The defendant shall refrain from entering into any area where children frequently congregate including, but not limited to, schools, daycare centers, theme parks and playgrounds*." (Emphasis added.) The oral sentence only states that James will "[h]ave no contact with underage children, unless [he has] the permission of the probation office." The emphasized language appears nowhere in the oral sentence, and substantially broadens the special condition by prohibiting James's geographical movements. While such a special condition may be appropriate in sex-offender cases, we must vacate the emphasized language and remand to the district court to harmonize the written condition with the oral pronouncement.

## III. *Conclusion*

For the reasons stated herein, we affirm James's lifetime term of supervised release and the imposition of Special Conditions 1, 2, 3, and 5. We vacate the district court's imposition of Special Condition 6, and remand to the district court to amend the written judgment to harmonize the terms of its oral sentence and the written conditions.

———————————————————

-15-