# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3341

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony McKinley Harris

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 25, 2018
Filed: November 19, 2018

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Anthony McKinley Harris pleaded guilty to conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, and to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). At sentencing, overruling Harris's objection to the Presentence Investigation Report ("PSR"), the district court found that Harris was responsible for distributing 97.32 grams of heroin and 17.5 grams of cocaine base, producing a base offense level of 24.

See U.S.S.G. §§ 2D1.1(a)(5), (c)(8), comment. (n.8). The court also adopted the PSR determination that Harris's extensive criminal history placed him in criminal history category V, to which Harris did not object. These findings resulted in an advisory guidelines sentencing range of 140-175 months imprisonment. The court imposed a 175-month sentence, stating that, but for mitigating factors, "an upward variance would have been imposed" because Harris's criminal history category under-represents the seriousness of prior residential burglary convictions. Harris appeals his sentence, arguing the district court clearly erred in including 17.5 grams of cocaine base in determining his base offense level, and committed plain error in assigning a criminal history point for an offense committed while he was a minor. We agree with both contentions and remand for resentencing.

**A. Drug Quantity.** The base offense level for Harris's heroin distribution conspiracy offense is based upon the Drug Quantity Table in U.S.S.G. § 2D1.1(c). Paragraph 30 of the PSR included 17.5 grams of cocaine base in determining drug quantity, explaining that Ariyl True purchased 0.5 grams of heroin from Harris on 100 occasions and "observed Harris with an eight-ball (3.5 grams) of cocaine base on five or six occasions." Harris objected to "the reported duration and frequency of transactions" reported in paragraph 30 and in addition objected "to any involvement with crack cocaine." Because the district court found that Harris distributed less than 100 grams of heroin, his base offense level is 22, rather than level 24, if the 17.5 grams of cocaine base are not included. Harris objected to the PSR's inclusion of cocaine base in the drug quantity calculation, so we review this issue for clear error. United States v. Maggard, 156 F.3d 843, 848 (8th Cir. 1998) (standard of review).

In the factual basis section of his Plea Agreement, Harris admitted that he joined an agreement "to distribute and possess with intent to deliver heroin," that he sold heroin to a confidential source on three occasions, and that a backpack found in his hotel room contained aluminum foil bindles of heroin. The issue here is whether a quantity of a different controlled substance, cocaine base, was relevant conduct that

should be included in the determination of drug quantity. The Guidelines expressly provide that, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd.). "Factors to be considered in making this determination include the similarity, regularity, and temporal proximity of the charged and uncharged conduct." United States v. Ault, 446 F.3d 821, 823 (8th Cir. 2006); see § 1B1.3, comment. (n.5(B)(ii)).

At sentencing, the government's only witness was Detective Bryan Butt of the Davenport Police Department, who served as case agent in the investigation of Harris. Detective Butt testified that Ariyl True was used as a confidential source in making three controlled purchases of heroin from Harris in February and March 2016. Butt further testified:

> Q. How many times did [Ms. True] say approximately that she had received heroin from Mr. Harris?
>
> A. She said that she had been purchasing heroin from Mr. Harris for approximately a year and she estimated that she had purchased heroin from him over a hundred times.
>
> Q. Did she provide a quantity as to how much heroin she was being provided?
>
> A. She was purchasing half gram amounts.
>
> Q. Did Ms. True ever see Mr. Harris with any other controlled substances?
>
> A. She reported seeing him with an eight ball of crack cocaine on five or six different occasions.

On cross examination, Detective Butt confirmed that neither of the other two persons who reported purchasing quantities of heroin from Harris "reported possession of cocaine or any knowledge of cocaine involvement with Mr. Harris." This testimony was the only evidence relating to Harris's alleged distribution of crack cocaine.

In United States v. Lawrence, 915 F.2d 402 (8th Cir. 1990), we affirmed the district court's finding that the defendant's possession and distribution of cocaine was relevant conduct to his conviction for conspiring to distribute marijuana. Lawrence admitted he had distributed cocaine within several months of the marijuana conspiracy, there was evidence of at least one common customer, and Lawrence's marijuana source testified that he was also a cocaine dealer. Id. at 407. We noted that "[t]he conduct at issue, possessing and distributing cocaine, is similar in character to, and occurred at approximately the same time as, the distribution of marijuana." Id. at 408. Thus, "there was sufficient evidence of the same course of conduct." Id.

By contrast, in United States v. Montoya, 952 F.2d 226, 229 (8th Cir. 1991), the issue was whether "Montoya's participation in an attempt to buy 4,900 pounds of marijuana in central Florida was the 'same course of conduct' as his participation in the conspiracy to distribute cocaine in Omaha three months earlier." We concluded it was not and remanded for resentencing. "While the Guidelines permit inclusion of additional [drug] transactions in determining [a defendant's] offense level, they require some meaningful relationship among them before discrete transactions in different drugs may be attributed to the 'same course of conduct' or a 'common scheme or plan.' Proof of such a relationship was simply lacking here." Id.

Here, after careful review of the sentencing record, we conclude the government failed to prove a "meaningful relationship" between "discrete transactions in different drugs." Harris pleaded guilty to a conspiracy to *distribute* controlled substances. Detective Butt testified only that Ms. True *purchased* heroin from Harris on 100 occasions and *observed* that Harris possessed an eight-ball of

cocaine base on five or six undated occasions. There was no direct evidence of Harris distributing cocaine base, and the quantity Ms. True observed on each occasion was potentially as consistent with personal use as with intent to distribute. See United States v. Delpit, 94 F.3d 1134, 1153 (8th Cir. 1996) (it "is a close call" whether possession of 3.7 grams of crack cocaine is too small an amount to support an inference of intent to distribute); United States v. White, 969 F.2d 681, 684 (8th Cir. 1992) (possession of 7.5 grams of cocaine, standing alone, was insufficient to support an inference of intent to distribute). Thus, this is not a case like United States v. Spence, where we upheld the district court's finding that a prior seizure of 127 kilograms of marijuana was part of the same course of conduct as the defendant's offense of conviction because "the two incidents occurred within a few months and involved distribution quantities of the same drug." 125 F.3d 1192, 1195 (8th Cir. 1997).

We conclude the district court clearly erred in finding that Detective Butt's credible testimony that Ms. True reported observing Harris with a small quantity of cocaine base on a few occasions was sufficient to prove by a preponderance of the evidence a "meaningful relationship" between those occasions and Harris's many heroin distribution transactions that were properly aggregated in determining the base offense level for his conspiracy offense. The government complains that it was misled into not presenting more evidence relating to cocaine base because Harris's Sentencing Memorandum focused only on "imprecise estimates from unreliable witness accounts." However, Harris's objection to paragraph 30 of the PSR "object[ed] to any involvement with crack cocaine," and his Sentencing Memorandum expressly "maintain[ed] previously submitted objections." This issue must be taken up with the district court on remand.

**B. Criminal History.** The PSR recounted Harris's extensive criminal history and assigned ten criminal history points for five of his prior convictions. One point was assigned for a drug offense Harris committed in Illinois in 2007, when he was 17

years old. Harris contends on appeal that it was error to assign one point under U.S.S.G. § 4A1.1(c) for a juvenile sentence that was imposed more than five years before the commencement of the instant offense. See § 4A1.2(d)(2). The mistake was prejudicial, Harris argues, because reducing his criminal history points from 10 to 9 places him in criminal history category IV instead of category V, reducing his advisory guidelines sentencing range from 140-175 months to 121-151 months. Because he did not object in the district court, we review this issue for plain error. If Harris can establish an error that is plain and that affects his substantial rights, we have discretion to correct the forfeited error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc); see Fed. R. Crim. P. 52(b).

The government agrees a plain sentencing error was made but argues there was no plain error because Harris is "unable to prove the error affected his substantial rights." In the "ordinary case," the defendant must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016) (quotation omitted). In Molina-Martinez, the Court recognized that "[w]hen a defendant is sentenced under an incorrect Guidelines range -- whether or not the defendant's ultimate sentence falls within the correct range -- the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Id. at 1345. The Court emphasized that the appellate court must consider the facts and circumstances of a particular case:

> The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. . . . Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Id. at 1346-47.

-6-

The Court again took up the question of plain Guidelines sentencing error in Rosales-Mireles v. United States, 138 S. Ct. 1897 (2018), a case involving, like this case, a plain error that placed the defendant in the wrong criminal history category. The Fifth Circuit concluded that Rosales-Mireles established a plain error that affected his substantial rights but declined to remand for resentencing because he "failed to establish that the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id. at 1905. The Supreme Court reversed. "A plain Guidelines error that affects a defendant's substantial rights is precisely the type of error that ordinarily warrants relief under Rule 52(b)," the Court explained, because it "usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than 'necessary' to fulfill the purposes of incarceration." Id. at 1907. As in Molina-Martinez, the Court emphasized that this is a case-specific inquiry. "There may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction." Id. at 1909.

In this case, unlike Rosales-Mireles, the main issue on appeal is whether the plain error in determining Harris's criminal history category affected his substantial rights. The government argues, with considerable force, that there is no reasonable probability that Harris would have received a lower sentence had his criminal history been properly calculated because the district court sentenced Harris to the top of the higher range, commenting that Harris's criminal history category substantially under-represented the seriousness of his prior convictions. However, the court did not expressly state that it would have alternatively imposed the same sentence even if a lower guideline range applied, as in United States v. Dace, 842 F.3d 1067, 1069-70 (8th Cir. 2016). We read Molina-Martinez and Rosales-Mireles as strongly cautioning courts of appeals not to make such assumptions when "the record is silent as to what the district court might have done had it considered the correct Guidelines range." Molina-Martinez, 136 S. Ct. at 1347. Particularly because we must remand for resentencing on the drug quantity issue, we conclude that this criminal history

category issue should also be addressed by the district court at resentencing.  See United States v. Icaza, 492 F.3d 967, 970-71 (8th Cir. 2007).

For the foregoing reasons, we vacate Harris's sentence and remand to the district court for resentencing.  We impose no limitations on the district court's function at resentencing.  See United States v. Eason, 907 F.3d 554, 2018 WL 527168 at *2 (8th Cir. 2018).

———————————————