# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1870
_____

United States of America

*Plaintiff - Appellee*

v.

Brian Don Floss

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 14, 2022
Filed: July 29, 2022
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Brian Don Floss pleaded guilty to knowingly failing to provide information and then engaging in intended travel in foreign commerce in violation of 18 U.S.C. § 2250(b), part of the Sex Offender Registration and Notification Act ("SORNA").

The district court[1] sentenced him to 36 months imprisonment and 15 years of supervised release, including "up to" three years of home detention in Special Condition 1 of his supervised release. Floss appeals, arguing the court (i) procedurally erred and imposed a substantively unreasonable term of imprisonment; (ii) procedurally erred in determining his supervised release advisory guidelines range and failed to adequately explain why it imposed a 15-year term; and (iii) erred in imposing sex-offender-related special conditions of supervised release. We affirm the sentence but remand with instructions to amend the written judgment to conform to the court's oral pronouncement of Special Condition 1 at sentencing.

## I. Background

Floss was convicted of second-degree sexual assault in Arkansas state court in February 2003, an offense requiring him to register under the Arkansas Sex Offender Registration Act of 1997. See Ark. Code Ann. § 12-12-901 *et seq.* At the time of his arrest, Floss was an elementary school teacher. The victim, B.H., was one of his third-grade students. The Arkansas Sex Offender Assessment Committee later classified Floss as a Level 4 "sexually dangerous person," the highest assigned risk level, in a procedure that is subject to administrative and judicial review. See § 12-12-918; see generally Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1012-13 (8th Cir. 2006), cert. denied, 550 U.S. 917 (2007). Arkansas requires lifetime registration for a Level 4 offender. § 12-12-919(a)(2). In addition, SORNA requires Floss to register in the State where he resides, 42 U.S.C. §§ 16911(1), 16913(a), and provides that knowing failure to do so is a federal offense, 18 U.S.C. § 2250(a).

SORNA also provides that Floss must notify his probation officer of intended international travel 21 days in advance of such travel. See 18 U.S.C. § 2250(b); 34

---

[1]The Honorable Lee P. Rudofsky, United States District Judge for the Eastern District of Arkansas.

U.S.C. § 20914(a)(7). While registering in January 2020, Floss signed a form verifying that he understood his international travel reporting responsibility. Without reporting beforehand, Floss departed Little Rock, Arkansas, on March 7, 2020, arriving in Ukraine the next day. COVID-19 restrictions extended his travel. He returned to the United States on May 30. This prosecution followed.

At sentencing, the government urged imprisonment for 48 to 60 months, an upward variance from the advisory guidelines range of 18 to 24 months. In support, it offered an April 2014 Sex Offender Community Notification Assessment Report ("SOCNA"), prepared as part of the Arkansas Department of Corrections risk classification process. Floss objected to the report's accuracy and reliability. The court admitted the report and found by a preponderance of the evidence that Floss has a long-standing sexual attraction to 9- to 11-year-old girls and has offended a total of 10 to 12 victims between the ages of 9 to 11. These additional victims led the court to conclude that the Presentence Investigation Report ("PSR") under-represented Floss's criminal history at Category III, warranting an above-guidelines range sentence. But the court stated that 48 months "for a SORNA violation of this kind is just too long" and sentenced Floss to 36 months imprisonment.

Regarding supervised release, the PSR correctly noted that the statutory range is five years to life, see 18 U.S.C. § 3583(k), and the relevant guideline provision is USSG § 5D1.2(b). Floss's response to the government's upward variance motion noted that Application Note 1 to § 5D1.2(b) expressly provides that the term "sex offense" "does not include an offense under 18 U.S.C. § 2250 (Failure to register)." However, at sentencing, the district court stated:

> With respect to the guidelines since the statute requires a term of supervised release of five years . . . the guidelines requirement for a term of supervised release is five years to life. That's from U.S.S.G. 5D1.2(b).

The court asked if defense counsel agreed with this statement. Counsel responded, "Yes, sir." After lengthy argument regarding the term of imprisonment, the court imposed a prison term of 36 months to be followed by "supervised release for a term of 15 years." The court then asked if defense counsel has "any objection to the form of the sentence." The response: "I actually don't have any specific law to cite. I just would like to object to . . . the 15 year term and the other conditions so that I can preserve our objection for appeal."

## II. Imprisonment Issues

Floss argues that the district court procedurally and substantively erred when it failed to adequately explain his sentence. By sentencing Floss to 36 months of imprisonment and 36 months of home detention, he contends that the district court imposed a sentence of 72 months of "confinement," a sentence that cannot be reconciled with the court's statement that 48 months of imprisonment "for a SORNA violation of this kind is just too long." This contention is without merit.

A person found guilty of a federal offense shall be sentenced to a term of probation, a fine, or "a term of imprisonment as authorized by subchapter D." 18 U.S.C. § 3551(a)-(b). Subchapter D provides that "[a] defendant who has been found guilty of an offense may be sentenced to a term of imprisonment." § 3581(a). In determining whether to impose a term of imprisonment, the court "shall consider the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(a). In imposing the sentence, the court "may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release *after imprisonment*." § 3583(a) (emphasis added). "Home detention may be imposed as a condition of probation or supervised release, but only as a *substitute for imprisonment*." USSG § 5F1.2 (emphasis added). The plain meaning of these governing provisions makes clear what common sense teaches -- home detention may be a form of "confinement," but it is not "imprisonment." Thus, the district court did

not procedurally or substantively err when it thoroughly but separately explained why it was imposing a 36 month term of imprisonment and up to 36 months of home detention as a special condition of supervised release.

### III. Supervised Release Issues

**A.** Floss first argues his supervised release sentence must be reversed because the district court procedurally erred in calculating the advisory guidelines range under USSG § 5D1.2. For the following reasons, we disagree.

At sentencing, the district court stated: "the guidelines requirement for a term of supervised release is five years to life. That's from U.S.S.G. [§] 5D1.2(b)." Defense counsel, authorized to speak for Floss on this issue, agreed. Under United States v. Olano, 507 U.S. 725, 732-35 (1993), that should have waived the issue. See Fed. R. Crim. P. 51(b); United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993). If the issue was forfeited but not waived, our review is for plain error. Fed. R. Crim. P. 52(b). Plain error review is governed by a four-part test:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Johnson v. United States, 520 U.S. 461, 466-67 (1997) (cleaned up). Floss has the burden of proving plain error. Olano, 507 U.S. at 734-35. "Appellate review under the plain-error doctrine . . . is circumscribed and we exercise our power under Rule 52(b) sparingly." Jones v. United States, 527 U.S. 373, 389 (1999).

As the PSR and the district court noted, the *statutory* supervised release range for a SORNA offense is 5 years to life. See 18 U.S.C. § 3583(k), which expressly provides that the authorized term for a list of offenses including 18 U.S.C. § 2250 "is any term of years not less than 5, or life." As relevant here, Section 5D1.2 of the Guidelines provides:

> (b) . . . the length of the term of supervised release shall be not less than the minimum term of years specified for the offense under subdivisions (a)(1) through (3) and may be up to life, if the offense is . . . (2) a sex offense.
>
> (Policy Statement) If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended.
>
> (c) The term of supervised release imposed shall be not less than any statutorily required term of supervised release.

The term "sex offense" is defined in Application Note 1. In Amendment 786, effective November 1, 2014, the Sentencing Commission, to resolve a perceived circuit conflict, amended Application Note 1 to provide, "Such term does not include an offense under 18 U.S.C. § 2250 (Failure to register)." USSC Guidelines Manual, 2021 Supp. to App'x C, at 74-77. The Commission explained:

> If a failure to register is a sex offense, then [§ 5D1.2](b) specifically provides for a term of supervised release of anywhere from the minimum provided by subsection (a) to the maximum provided by statute (i.e., life), and a policy statement contained within subsection (b) recommends that the maximum be imposed.

On appeal, Floss argues, as some circuits have held, that because failure to register is not a sex offense, "[t]he Guidelines recommendation for the length of supervised release is thus just five years, rather than . . . five years to life." United States v.

Putnam, 806 F.3d 853, 855 (5th Cir. 2015).[2]  Therefore, he contends, the court committed plain error in calculating the guidelines range as 5 years to life.

In United States v. James, 792 F.3d 962 (8th Cir. 2015), the defendant was convicted of failure to register, the PSR recommended a range of 5 years to life under § 5D1.2(b), and James squarely raised this issue in the district court.  We nonetheless upheld imposition of a lifetime term of supervised release.  We explained that the district court "understood that a failure to register is not itself a sex offense" under § 5D1.2(b), but the court properly stated, "I can impose a term of supervised release more than that five years if I explain the circumstances," and then imposed a lifetime supervised release term authorized by 18 U.S.C. § 3583(k).  Id. at 967-68.  We concluded that "the court did not abuse its discretion by taking into account James's history and the need to protect the public" in varying upward from the § 5D1.2(b) range.  Id. at 968.

Here, the PSR stated that § 5D1.2(b) was the relevant guidelines provision, recommended a 15 year supervised release term, but did not address whether Floss's offense was a "sex offense."  Floss pointed out in his motion response that a SORNA failure to register offense is not a "sex offense" under § 5D1.2(b).  The court acknowledged in responding to Floss's imprisonment argument that the Guidelines "probably treat a SORNA violation less strictly than a sexual assault against a minor."  Thus, if a SORNA travel violation is not a "sex offense," which we will assume without deciding, the court made a mistake in stating that the guidelines range was

---

[2]Floss was convicted of an international travel violation, 18 U.S.C. § 2250(b), not a failure to register violation, § 2250(a).  Congress added § 2250(b) because international travel facilitates commercial sex trafficking of minors.  See 34 U.S.C. § 21501(4)-(6).  The Commission decided that failure to register is not a sex offense because it is "never 'perpetrated against a minor.'"  Arguably, that reasoning does not apply to § 2250(b) travel violations, in which case the statutory range of 5 years to life applies.  We need not resolve that question in this case.

5 years to life under § 5D1.2(b). Instead, like the district court in <u>James</u>, the court should have said the guidelines range was five years and it was varying upward to a fifteen year term of supervised release. In other words, the court made a mistake -- to which both parties agreed -- in explaining how 18 U.S.C. § 3583(k) and USSG § 5D1.2(b) and (c) authorized the term of supervised release it was imposing.

As <u>James</u> makes clear, even if this was guidelines error, it was not plain error. During the sentencing hearing, the court repeatedly provided reasons why an advisory guidelines 5 year term would be insufficient:

> THE COURT: [Defense counsel], let me tell you the one thing that I'm most concerned about. Other than the offense conduct and the past conduct which goes without saying. So Mr. Floss has seemed not to be particularly able to follow the rules. And in this situation, the rules are set up to make sure society and particularly some of the most vulnerable among us are safe. And he's repeatedly violated rules on revocation, rules while he's been in prison, rules -- in fact, this SORNA violation . . . it's not like this was his first violation . . . And I think the hardest thing for me to sort of figure out is how I get Mr. Floss to understand that he has to follow these rules. And given that he hasn't been following the rules, what do I do to change that behavior? So that's really what's concerning me.
>
>       *    *    *    *    *
>
> . . . I want to talk about protection of the public. You need to follow the rules. There can be no guarantee that the public is protected unless I get you to follow the rules that are placed on you. And your history shows me a disrespect for the rules. . . . [O]ne thing comes through which is that somehow you keep repeating violations of the rules.

Had Floss timely objected to the court's *range* determination, it would have varied upward based on these legitimate concerns, as the district court did in <u>James</u>.

For the same reason, we conclude that, even if the court's mistake was plain error, Floss cannot satisfy the third Olano factor, that the error affected his substantial rights. "[I]n the ordinary case [this] means he . . . must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." Molina-Martinez v. United States, 578 U.S. 189, 194 (2016). "When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Id. at 198. Applying this standard, based on the district court's statements that it intended to get Floss to follow the rules in order to protect the public, Floss cannot demonstrate he would have received a more favorable term of supervised release if the court had started with an advisory guidelines range of five years and varied upward. After reviewing Floss's history and characteristics at length, which included violations of prison rules, numerous parole violations, and the instant SORNA violation, the court advised Floss that if he violated SORNA again, "regardless of what the guidelines say, I can pretty much guarantee you you are not going to have a good day."

Moreover, in establishing SORNA's "comprehensive national system for the registration of [sex] offenders," 34 U.S.C. § 20901, 42 U.S.C. § 16901, Congress required States to "maintain a jurisdiction-wide sex offender registry" that conforms to SORNA's detailed registration requirements. See 34 U.S.C. §§ 20912-20914; 42 U.S.C. §§ 16912-16914. Floss is subject to lifetime Arkansas registration obligations. He makes no showing that his 15-year supervised release term will restrict his liberty significantly more than his obligation to comply with this state law duty to register and "follow the rules."

**B.** Floss next argues the district court committed plain error by failing to sufficiently explain the 15 year term of supervised release. For reasons already stated, we disagree. Because supervised release is one part of the sentence, a single consideration of the relevant sentencing factors can embrace both the imprisonment

sentence and the supervised release term. "One overarching explanation often will provide an adequate explanation for the duration of supervised release." United States v. Carson, 924 F.3d 467, 471 (8th Cir.) (cleaned up), cert. denied, 140 S. Ct. 405 (2019). Here, the district court explained that "part of what I have to do is . . . figure out how to deter you from violating SORNA again." The court did not fail to provide sufficient explanation for the term of supervised release.

**C.** Floss next argues that imposing home detention as a special condition of supervised release is substantively unreasonable because the district court did not consider policy statement USSG § 5D1.3(e)(2): "Home detention may be imposed as a condition of supervised release, but only as a substitute for imprisonment." This contention is totally without merit. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations omitted). In determining the sentence to be imposed, the court shall consider "any pertinent policy statement issued by the Sentencing Commission," such as § 5D1.3(e)(2). 18 U.S.C. § 3553(a)(5). It is not required to mechanically list all the § 3553(a) factors. United States v. Adams, 104 F.3d 1028, 1031 (8th Cir. 1997).

Here, the district court advised the parties it would not talk about every factor. "What I will tell you is I have specifically thought about each one." A term of home detention in lieu of further imprisonment was authorized by the § 5D1.3(e)(2) policy statement, and the three-year term, even if viewed together with the term of imprisonment, was well within the statutory maximum terms of imprisonment and supervised release. Cf. United States v. Ferguson, 369 F.3d 847, 850-52 (5th Cir. 2004). Absent a specific objection or request to clarify, there was nothing more for the court to consider.

**D.** Finally, Floss argues the district court erred in imposing twelve sex-offender special conditions of supervised release because they fail to satisfy the requirements of 18 U.S.C. § 3583(d). The district court has broad discretion to impose a special condition that "(1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a)(1) and (a)(2)(B)-(D); (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)(2)(B)-(D); and (3) is consistent with any pertinent policy statements." United States v. Puckett, 929 F.3d 1004, 1006 (8th Cir. 2019), citing § 3583(d). Special conditions need not be reasonably related to the instant conviction if they are reasonably related to other sentencing factors identified in § 3583(d), including the defendant's history and characteristics and the need to protect the public from further crimes. Id. at 1007.

We review the imposition of special conditions for abuse of discretion, but if the defendant failed to properly object at the sentencing hearing, we review for plain error. United States v. Simons, 614 F.3d 475, 478 (8th Cir. 2010). At sentencing, in response to the district court's inquiry, Floss stated he objected to the special conditions as not being "narrowly tailored." The district court responded, "if there's something that particularly you think is not narrowly tailored, I think you need to let me know so I at least have a chance to consider your argument." Floss replied he was objecting to "preserve our objection for appeal." The district court pressed the point: "Again, if you have something that you think is not particularly narrowly tailored specifically, I'm happy to listen to your argument . . . ." Floss replied, "I don't have any more detail to add."

This blanket, generalized objection did not provide the district court "an opportunity to prevent or correct the error in the first instance." Williams, 994 F.2d at 1294 (quotation omitted). Accordingly, we review for plain error. See United States v. Perrin, 926 F.3d 1044, 1046-47 (8th Cir. 2019). Plain error is a "formidable" standard of review if the reasons for imposing a special condition "are discernable from the record." United States v. Deatherage, 682 F.3d 755, 763 (8th

-11-

Cir. 2012) (quotation omitted), citing <u>Olano</u>, 507 U.S. at 732. We next consider Floss's plain error objections to each special condition.

As pronounced at sentencing, Special Condition 1 requires Floss to spend "up to three years" of his 15-year term of supervised release in home detention and to follow the rules and regulations of his home monitoring program. But the written judgment states that this restriction "is for the first three years of supervised release." The parties agree that if the court's oral pronouncement and its written judgment conflict, the oral pronouncement controls. Therefore, we remand for the district court to amend the written judgment to conform to its oral pronouncement at sentencing. See <u>United States v. Mays</u>, 993 F.3d 607, 622 (8th Cir. 2021).

Special Condition 2 requires Floss to participate in sex offender treatment. Floss argues he previously completed treatment, does not need additional treatment, and the court made no finding he needs additional treatment. The record reflects that Floss is diagnosed with a pedophiliac disorder, including "a mental abnormality" that makes him "likely to engage in predatory acts of sexual violence." The 2014 SOCNA report states that, in interviews, he continued to deny wrongdoing, suffered from cognitive distortions, and failed to internalize prior sex-offender treatment. The district court repeatedly emphasized the need to protect the public from Floss. The court's reasons for imposing this special condition are discernable from the record. See <u>James</u>, 792 F.3d at 971. There was no plain error.

Special Condition 3 restricts Floss's access to pornography, including adult pornography. The district court acknowledged First Amendment concerns with this condition and provided reasons for imposing it:

> [G]iven what I understand from your PSR and from the SOCNA report, you have a sort of 50/50 attraction to underage women and mature women, so I think you viewing adult pornography would be and is a

-12-

gateway into the problems you have with minors, and so that is the reason that I am including the ban on even looking at adult pornography.

The court's concerns are supported by the record -- at the time Floss sexually assaulted B.H. he was viewing adult pornography, and one of his parole violations involved the use of pornography. There was no plain error. See Deatherage, 682 F.3d at 764.

Special Condition 3 also prohibits Floss from viewing or possessing "any other material that would compromise your sex offender specific treatment." Floss argues this restriction is impermissibly vague. Limiting access to materials that hinder sex-offender treatment protects the public. See 18 U.S.C. § 3553(a)(2)(C). The need for this special condition is discernible from Floss's history of sexual offenses as set forth in the 2014 SOCNA report. There was no plain error.

Special Conditions 4 through 7 restrict internet access and usage to "reasons approved in advance by the probation officer" (Special Condition 4); authorize the probation office to install computer monitoring software (Special Condition 5); require Floss to obtain probation officer permission before possessing or using computers "or other electronic communication or data storage devices or media" (Special Condition 6); and require Floss to allow "initial and periodic unannounced searches of any computers . . . subject to computer monitoring" (Special Condition 7). Floss argues there is no evidence that he used a computer or the internet to commit either the underlying sexual assault or the SORNA violation. But he used a computer or the internet in traveling to Ukraine because the airline ticket confirmation was emailed to him. Additionally, his prior parole violations include an unregistered email account, accessing pornography, and using the internet. Thus, the reasons for imposition of these computer and internet restrictions are discernable from the record, and the court imposed conditions "requiring advance approval of the

-13-

probation officer . . . rather than outright prohibitions." United States v. Cramer, 962 F.3d 375, 383 (8th Cir. 2020). There was no plain error.

Special Condition 8 provides that Floss "must submit [his] person, property, house, residence, vehicles, papers, computers, as defined in 18 U.S.C. [§] 1030(e)(1), other electronic communications or data storage devices or media or office to a search conducted by a United States probation officer. . . . The probation officer may conduct a search under this condition only when reasonable suspicion exists that [Floss has] violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner." Floss argues this condition is not narrowly tailored to his offense or history and involves a greater deprivation of liberty than is reasonably necessary. This special condition is expressly allowed by § 3583(d) because Floss is required to register under SORNA. There was no plain error. See James, 792 F.3d at 969-70.

Special Condition 9 restricts online gaming. It also limits social media usage -- maintaining memberships or accounts of social networking websites that allow minor children membership without approval of the probation office, including "websites that explicitly prohibit access or use by sex offenders." Floss argues this special condition bears no reasonable relationship to the instant offense and is not reasonably related to the 3553(a) factors simply because of his criminal history. The district court conducted an individualized inquiry into this special condition, concluding: "in the on-line gaming world, there is often a connection or at least a strong potential that that world opens itself up to exploitation of children and also can be used as a gateway." Considering Floss's prior sexual assault of an elementary-school child, and diagnosed likelihood "to engage in predatory acts of sexual violence," there was no plain error.

Special Condition 10 provides: "The probation office will provide state officials with all information required under any sexual predator and sexual offender notification and registration statutes and may direct the defendant to report to these agencies personally for required additional processing such as interview and assessment, photographing, fingerprint, polygraph testing, and DNA collection." Floss argues this condition is not reasonably related to the 3553(a) factors simply because of his criminal history. This special condition promotes coordination between the federal probation office and state officials. It is consistent with the primary purposes of SORNA and reasonably related to the district court's principal concern to protect the public. There was no plain error.

Special Condition 11 prohibits "direct contact with any child you know or reasonably should know to be under the age of 18 not including your own children without the permission of the probation officer. . . . Direct contact does not include incidental contact during ordinary daily activities in public places." Floss argues this special condition is unduly restrictive and overly broad. In Simons, we held that a similar special condition was neither unreasonably restrictive nor plainly erroneous in light of the defendant's criminal record and history of sexual abuse of minors. 614 F.3d at 481-82. Here, given Floss's history of sexual abuse of minors set forth in the SOCNA report, including sexual abuse of at least one young cousin at his home, the district court reasonably determined that permitting Floss to live on the same property as a minor would be a "disaster waiting to happen." As in Simons, Floss may seek permission from the probation officer to obtain an exception to this restriction. There was no plain error.

Finally, Special Condition 12 prohibits Floss from entering or remaining "at any place where you know children under the age of 18 are likely to be including parks, schools, playgrounds, and childcare facilities." Floss argues this condition is not reasonably related to the 3553(a) factors simply because of his criminal history. Restrictions on sex offenders being at locations where children congregate is

"consistent with the district court's duty to protect the public" from future crimes. Simons, 614 F.3d at 482. There was no plain error.

## IV. Conclusion

For these reasons, we remand with instructions to amend the written judgment to conform to the district court's oral pronouncement of Special Condition 1. In all other respects, the judgment of the district court is affirmed.

GRASZ, Circuit Judge, dissenting in part.

Because I see nothing establishing the district court would impose the same sentence absent its miscalculation of the advisory Guidelines, I respectfully dissent in part.[3]

The district court committed procedural error in calculating Floss's Guidelines term of supervised release. As the government concedes, see Appellee Br. at 26, the term should have been calculated at five years, not five to life. This was plain error. And under Supreme Court precedent, this error affected Floss's substantial rights. See United States v. Harris, 908 F.3d 1151, 1156 (8th Cir. 2018) (interpreting Molina-Martinez v. United States, 578 U.S. 189 (2016), and Rosales-Mireles v. United States, 138 S. Ct. 1897, 1907 (2018), "as strongly cautioning" circuit courts to not assume what the district court might do had it calculated the Guidelines correctly).

The court's opinion gestures to the controlling Supreme Court precedent but then proceeds to evade it: "[E]ven if the court's mistake was plain error, Floss cannot [show] . . . that the error affected his substantial rights." Ante at 9. To support this

---

[3]I would affirm all twelve special conditions of supervised release.

-16-

conclusion, the court references the sentencing transcript and sets forth one quote from it. Specifically, the court claims it is heeding the Supreme Court's warning but concludes Floss still cannot show a reasonable probability of a different outcome because of "the district court's statements that it intended to get Floss to follow the rules in order to protect the public[.]" Id. It then quotes the district court as saying, "regardless of what the guidelines say, I can pretty much guarantee you you are not going to have a good day." Id.

It is true this court frequently finds there is no reasonable probability of a different outcome (and therefore no effect on substantial rights) where an error has been made if the sentencing court says it would have imposed the same sentence regardless. We typically treat such prophylactic statements at sentencing as sufficient to support affirmance. But that is not the situation we have here. The sentencing court's remarks that it "intended to get Floss to follow the rules in order to protect the public" and that Floss was "not going to have a good day" tell us nothing about what sentence the district court would have imposed absent its erroneous Guidelines calculation. See Harris, 908 F.3d at 1156 (remanding on plain error review when "the [district] court did not expressly state that it would have alternatively imposed the same sentence even if a lower guideline range applied"). We should not evade the precedent exhorting against making assumptions as to what the district court might have done, had it considered the correct Guidelines range, based on such amorphous indications of a sentencing court's intent. There is nothing in the record indicating the district court would have imposed the same term of supervised release had it calculated the Guidelines range correctly. And it is not up to this court to supply the missing magic words.

_____

-17-